UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PRISCELLA SAINTAL,

        Plaintiff,

vs.

MARIA PESCE, et al.,

        Defendants.

Case No.: 2:15-cv-02460-GMN-NJK

**ORDER**

Pending before the Court is the Motion to Dismiss, (ECF No. 35), filed by Defendants Jo Gentry ("Gentry"), Willontray Holmes ("Holmes"),[1] David Molnar ("Molnar"), Todd Riches ("Riches"),[2] Gary Piccininni ("Piccininni"), and Nevada Department of Corrections ("NDOC") (collectively "Defendants"). Plaintiff Priscella Saintal ("Plaintiff") filed a Response, (ECF No. 39), and Defendants filed a Reply, (ECF No. 40). For the following reasons, the Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

I. **BACKGROUND**

This is a case arising from alleged events that occurred while Plaintiff was an inmate at Florence McClure Women's Correctional Center ("FMWCC"). (*See* Am. Compl., ECF No. 21 at 1). Plaintiff filed her *pro se* complaint on December 23, 2015, against Warehouse Supervisor Maria Pesce, NDOC Inspector General Pam Del Porto, Caseworker William Ruebert, inmate Susanne Carno ("Carno"), NDOC Inspector General Molnar, FMWCC Lieutenant Holmes, FMWCC Lieutenant Piccininni,[3] and NDOC Warden Gentry. (*See* Compl.,

---

[1] Incorrectly named as "Willontry Holmes"
[2] Incorrectly named as "T Riches"
[3] In Plaintiff's initial Complaint she states that Piccininni is employed as a Lieutenant at FMWCC, however, in her Amended Complaint, Plaintiff's states that Piccininni is a NDOC Associate Warden. (*See* Am. Compl. at 2, ECF No. 21).

ECF No. 1-3). On April 26, 2016, the Court issued a Screening Order dismissing Plaintiff's Religious Land Use and Institutionalized Persons Act claim and Equal Protection claim with prejudice. (*See* Screening Order 8:15–9:25, ECF No. 3). Additionally, the Court dismissed claims against William Ruebert, Piccininni, Pam Del Porto, Maria Pesce, and Susanne Carno with prejudice. (*See id*. 5:3–6:4, 7:4–13, 7:20–8:3, 8:4–9, ECF No. 3). The Court's Screening Order found that Plaintiff stated a colorable retaliation claim against Molnar, Holmes, and Gentry in her initial Complaint, (ECF No. 1-3). (*See id*. 6:28–7:3, 7:15–19).[4]

On November 8, 2016, Plaintiff moved for leave to amend her Complaint, which the Court initially denied on December 27, 2016. (*See* Mot. for Leave to Amend, ECF No. 20); (*see also* Order Den. Mot. for Leave to Amend, ECF No. 26). On April 17, 2017, the Court reconsidered its prior order denying Plaintiff's motion to amend the Complaint and reactivated the Amended Complaint, (ECF No. 21). (*See* Order Recons. Prior Order Den. Mot. for Leave to Amend, ECF No. 32).

In the Amended Complaint, Plaintiff alleges that on February 11, 2015, she was assaulted by inmate Carno. (*See* Am. Compl. at 5, ECF No. 21). Plaintiff alleges that Gentry was advised of the alleged sexual assault and ignored the incident. (*See* Compl. at 13, ECF No. 1-3). On February 26, 2015, Holmes, who conducted the PREA report,[5] informed Molnar of the alleged sexual assault. (*See id*.); (*see also* Screening Order 4:1–2, ECF No. 3). Plaintiff claims that Molnar told Holmes to "do nothing" to address the alleged assault. (*Id*.). Plaintiff alleges that Molnar refused to investigate the reported assault in retaliation after Plaintiff named Molnar as a defendant in two prior litigations. (*See* Compl. at 9, ECF No. 1-3).

---

[4] The Screening Order does not address NDOC Lieutenant Riches because Plaintiff raises claims against him for the first time in her Amended Complaint. (*See* Am. Compl. at 3–4, 6–7, ECF No. 21).
[5] The Prison Rape Elimination Act of 2003 ("PREA"), 42 U.S.C. § 15601.

Once Holmes was told not to investigate the sexual assault any further, he sent Plaintiff back to the same "pod" with Carno. (*See* Am. Compl. at 5, ECF No. 21). Plaintiff alleges that because she previously filed a PREA grievance against Holmes, he placed Plaintiff in the same cell as Carno in retaliation. (*See* Compl. at 9, ECF No. 1-3). Further, Plaintiff claims Gentry was involved in the decision to keep Plaintiff in the same cell as Carno on February 26, 2015. (*See* Am. Compl. at 7, ECF No. 21). Plaintiff alleges in her initial Complaint that Gentry retaliated against her because of grievances Plaintiff filed against Gentry in the past. (*See* Compl. at 13, ECF No. 1-3).

On October 1, 2015, Gentry, Piccininni, and Holmes allegedly retaliated against Plaintiff by choosing to place a convicted sex offender[6] in Plaintiff's cell after Plaintiff filed a PREA report against Piccininni. (*See* Am. Compl. at 5, ECF No. 21). Additionally, on October 23, 2016, Piccininni, Gentry, and Riches allegedly conspired to retaliate against Plaintiff because Plaintiff named Piccininni in a lawsuit. (*See id*. at 6). Plaintiff further claims that Riches and Piccininni: (1) performed a "shakedown" in unit one on July 5, 2016, during which they confiscated Plaintiff's personal property and appliances, claiming it was a "Drug Hit"; (2) wrote a fabricated NOC[7] about Plaintiff on August 10, 2016, intending to interfere with her upcoming parole board hearing on August 16, 2016; and (3) performed a disciplinary hearing in Plaintiff's absence, again confiscated her property, and placed Plaintiff on six months probation with canteen and phone restriction in October 2016. (*See id*.). Lastly, Plaintiff alleges that NDOC, which enforces PREA reports, failed to train its employees and staff on "protocol and zero tolerance." (*See id.*).

---

[6] This Court interprets the sex offender roommate to be an inmate other than Carno. According to Plaintiff's allegations, Defendants placed the convicted sex offender in Plaintiff's room on October 1, 2015, approximately eight months after the incident with Carno. (*See* Am. Compl. at 5, 7, ECF No. 21); (*see* Compl. at 12, ECF No. 3-1).

[7] Plaintiff's Amended Complaint fails to define an NOC. However, the Court believes this to be a "Notice of Charge," a type of disciplinary charge.

Plaintiff's Amended Complaint alleges three counts seeking declaratory relief, injunctive relief, and monetary relief. (*See id.* at 5–8). Based on Plaintiff's claims, the Court construes the Amended Complaint as alleging four causes of action:[8] (1) retaliation against Holmes, Molnar, Riches, and Gentry; (2) deliberate indifference against Holmes, Molnar, Riches, and Gentry; (3) due process violations against all named Defendants; and (4) failure to train employees against NDOC.[9] (*See generally* Am. Compl., ECF No. 21). In the instant Motion, Defendants request that the Court dismiss Plaintiff's Amended Complaint in its entirety because Plaintiff "fails to state claims upon which relief can be granted." (Mot. to Dismiss 8:2–5, ECF No. 35).

## II. **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[8] Although Plaintiff states three counts in her Amended Complaint that list multiple alleged violations in each count, in the interest of efficiency, the Court interprets these counts as causes of action. (*See generally* Am. Compl., ECF No. 21).
[9] The Court will not address Plaintiff's claims against Piccininni, Pesce, or Carno as the Screening Order dismissed these Defendants with prejudice. (*See* Screening Order, 5:3–6:4, 7:20–8:3, 10:17–19).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

In the instant Motion, Defendants move to dismiss Plaintiff's Amended Complaint because "Plaintiff fails to state claims upon which relief can be granted, requiring Defendants to speculate and draw unreasonable inferences as to the basis of Plaintiff's alleged claims." (Mot. to Dismiss 8:2–4, ECF No. 35). In light of Plaintiff's status as a *pro se* litigant, the Court has liberally construed Plaintiff's filing, holding her to standards less stringent than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The mandate to construe *pro se* pleadings liberally allows the Court to consider claims raised in the initial complaint that the *pro se* plaintiff intended to preserve in the second complaint. *See Tidwell v. Copeland*, No. 89-15550, 1990 WL 118344, at *2 (9th Cir. Aug. 7, 1990) (concluding that the district court should consider the issues raised in a *pro se* litigant's initial complaint because the plaintiff intended to supplement his initial complaint when he filed an amended complaint labeled "amended complaint in support of his complaint"). Here, it appears that Plaintiff intends for her second pleading to supplement, rather than supersede, her initial complaint. Plaintiff entitled her second pleading "Supplemental/Amended Complaint" and refers to factual occurrences that she explained more fully in her initial complaint. (*See* Am. Compl. at 1, ECF

No. 21). Thus, the Court concludes that Plaintiff intended to preserve the facts raised in her initial complaint. Accordingly, the Court will consider facts from Plaintiff's initial Complaint.

As a preliminary matter, to the extent that Defendants Holmes, Molnar, Riches, and Gentry are sued in their official capacities for damages, the Court dismisses these claims. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, n.55 (1978). "Suits against state officials in their official capacity therefore should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The real party in interest in an official-capacity suit is the governmental entity; "[i]t is not a suit against the official personally[.]" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "In an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Id*. Here, Plaintiff sues Holmes, Molnar, Riches, and Gentry in their individual and official capacities. (*See* Am. Compl. at 2–4). However, Plaintiff does not include factual allegations that Holmes, Molnar, Riches, and Gentry enforced a policy or custom that caused a violation of Plaintiff's rights. (*See* Am. Compl., ECF No. 21); (*see also* Compl., ECF No. 1-3). For this reason, the Court will only address Plaintiff's causes of action against NDOC in its official capacity and against all other Defendants in their individual capacities.

**A. Retaliation**

Prisoners have a First Amendment right to file prison grievances and to pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004). To state a viable First Amendment retaliation claim in the prison context, a plaintiff must allege: "(1)[a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Id*. at 567–68. A plaintiff need not show that his or her First Amendment

activity was in fact "chilled." *See Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999). Rather, a plaintiff must only show that the adverse action "would chill or silence a person of ordinary firmness from future First Amendment activities." *Id.* The first cause of action for retaliation is alleged against Defendants Holmes, Molnar, Riches, and Gentry. The Court will address the retaliation claim against each Defendant in turn.

### *i. Defendant Holmes*

Plaintiff alleges a colorable claim against Holmes by stating that Holmes retaliated by sending Plaintiff "back in the same pod with inmate Carno" after Carno allegedly sexually assaulted her. (Am. Compl. at 5). Specifically, Plaintiff alleges that Holmes took an adverse action against her by choosing not to investigate the claim or place Plaintiff in protective segregation after she was allegedly sexually assaulted. (*Id.*). Plaintiff alleges that Holmes' retaliatory behavior was caused by a grievance Plaintiff filed against him. (*See* Compl. at 10). Based on these facts, Plaintiff has met the first three elements necessary for a retaliation claim.

Although Plaintiff's First Amendment activities were not silenced, as evidenced by the current lawsuit, Plaintiff need only show that Holmes' activities "would chill or silence a person of ordinary firmness from future First Amendment activities." *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (internal quotation marks and citation omitted). The Court finds that Holmes' refusal to investigate Plaintiff's claim or to place her in protective segregation may have chilled a person of ordinary firmness from exercising their First Amendment rights. Therefore, Plaintiff fulfills the fourth element.

Plaintiff's allegation that Holmes decided to place Plaintiff in the same cell as the inmate that had previously assaulted her does not appear to further a correctional goal. (*See* Am. Compl. at 7). "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citation omitted). Furthermore, Defendants do not attempt to propound a legitimate correctional goal for Holmes'

actions. Rather, Defendants simply assert that Plaintiff has failed to state a claim. (*See* Mot. to Dismiss 5:13–6:9). Based on these allegations, Plaintiff fulfills the fifth element. Accordingly, Plaintiff sufficiently pleads the elements for a claim of a retaliation against Holmes.

### ii. Defendant Molnar

Plaintiff alleges that Molnar refused to order Plaintiff's protective segregation from the inmate who assaulted her and refused to investigate the assault because Plaintiff had named Molnar as a defendant in two lawsuits. (*See* Am. Compl. at 5, 7); (*see also* Compl. at 9). Plaintiff meets the first three requirements of a retaliation claim because Plaintiff alleges that her decision to file a lawsuit against Molnar led to his adverse actions. Additionally, because Molnar told Holmes not to place Plaintiff in protective segregation and Molnar refused to investigate her claim, Plaintiff fulfills the fourth and fifth elements for the reasons discussed *supra* in regards to Holmes. Accordingly, Plaintiff has stated a claim of retaliation that is plausible on its face against Molnar.

### iii. Defendant Gentry

Plaintiff claims that prior to the alleged assault she filed grievances against Gentry, Gentry chose not to address the reported assault, Gentry was a part of the decision to house Plaintiff with Carno, and later, Gentry assigned an unnamed convicted sex offender to live with Plaintiff. (*See* Am. Compl. at 5, 7); (*See* Compl. at 13). Essentially, Plaintiff claims that Gentry took adverse action against Plaintiff because Plaintiff had filed grievances against Gentry in the past. (*See* Am. Compl. at 5, 7); (*See* Compl. at 13). These facts fulfill the first three elements of Plaintiff's retaliation claim. For the reasons discussed *supra* in regards to Holmes and Molnar, Plaintiff's allegations that Gentry ignored the assault and was involved in the decision not to place Plaintiff in protective segregation fulfill the fourth and fifth elements. Accordingly, Plaintiff has sufficiently alleged a claim of retaliation against Gentry.

### iv. **Defendant Riches**

In her Amended Complaint, Plaintiff alleges that Riches retaliated in response to her lawsuit against Piccininni by carrying out the following adverse actions: (1) performing a "shakedown" during which he confiscated her personal property; (2) fabricating a NOC to interfere with Plaintiff's parole board; and (3) conducting a disciplinary hearing in Plaintiff's absence during which he confiscated her property and placed her on six months probation with canteen and phone restrictions. (*See* Am. Compl. at 6). Defendants do not address these factual allegations. Therefore, the first three elements of Plaintiff's retaliation claim have been sufficiently pled.

The Court finds that a person of ordinary firmness may have been chilled by Riches' alleged scare tactics, therefore, Plaintiff adequately pleads the fourth element required for a retaliation claim against Riches. Additionally, Plaintiff alleges that Riches acted in retaliation, rather than for legitimate reasons. (*See* Am. Compl. at 6). Although it is conceivable that there was a legitimate correctional purpose to confiscate Plaintiff's property, perform a disciplinary hearing in Plaintiff's absence, and place Plaintiff on probation, the existence of a legitimate justification is not enough to entitle Defendants to dismissal of this cause of action. *See Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). Moreover, in their Motion, Defendants make no attempt to proffer any legitimate correctional goal. In light of Defendants' silence, the Court will not assume that Riches acted according to a legitimate correctional goal. Thus, Plaintiff's retaliation claim against Defendant Riches survives.

### B. Deliberate Indifference or Failure to Protect

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). To prove this claim Plaintiff must show that: (1) she is incarcerated under conditions posing a substantial risk of serious harm; and (2) the prison official knew of and disregarded the

excessive risk to her safety. *See id.* at 834–37. In order for Plaintiff to succeed on a claim of deliberate indifference, subjective recklessness is required, that is, an official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. Essentially, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Plaintiff alleges that Defendants Holmes, Molnar, and Gentry failed to protect or were deliberately indifferent to Plaintiff's safety. (*See* Am. Compl. at 7). The Court will address the deliberate indifference claim against each Defendant in turn.

### i. Defendant Holmes

Plaintiff alleges that Holmes purposely housed Plaintiff with Carno, an inmate who allegedly sexually assaulted Plaintiff in the past. (*See* Am. Compl. at 5). The Court finds that it is reasonable to believe that this housing arrangement risked exposing Plaintiff to another sexual assault by Carno. Additionally, Plaintiff claims that Holmes knew of the risk because he conducted the PREA report and informed Molnar of the alleged assault. (*See id.*). Taking all factual allegations as true, Holmes had knowledge of and disregarded the potential risk of sexual assault to Plaintiff. Thus, Plaintiff successfully alleges a deliberate indifference claim against Holmes.

### ii. Defendant Molnar

Plaintiff successfully alleges a deliberate indifference claim against Molnar for the same reasons as discussed *supra* in regards to Holmes. Specifically, by alleging that Molnar ordered Holmes not to investigate the PREA report, Plaintiff establishes that: (1) she was incarcerated under conditions posing a substantial risk of a second sexual assault by Carno; and (2) Molnar was alerted of the risk to Plaintiff's safety and disregarded the risk. (Am. Compl. At 5). Plaintiff therefore alleges a legally cognizable claim of deliberate indifference against Molnar.

### iii. Defendant Gentry

Plaintiff successfully alleges a deliberate indifference claim against Gentry for the same reasons as discussed *supra* in regards to Holmes and Molnar. First, Plaintiff alleges that Gentry was advised of the assault yet did nothing in response. (*See* Compl., at 13). Second, Plaintiff alleges that Gentry was involved in the decision to place Plaintiff back in a cell with Carno. (*See* Am. Compl. at 7). These allegations establish that Gentry knowingly exposed Plaintiff to the risk of being assaulted again when Gentry participated in the decision to house Plaintiff in the same cell as the person who previously assaulted Plaintiff. Based on these pleadings, the Court is able to draw the reasonable inference that Gentry is liable for a deliberate indifference claim. Accordingly, this claim survives.

## C. Due Process

Prisoners have no stand-alone due process rights related to the administrative grievance process. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding that a state's unpublished policy statements establishing a grievance procedure do not create a constitutionally protected liberty interest); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest in the processing of appeals because there is no liberty interest entitling inmates to a specific grievance process). As stated in the Court's Screening Order, "[b]ased on the law, Plaintiff does not have a right to have prison officials process or investigate an inmate grievance in any specific way." (Screening Order 6:14–15, ECF No. 3). Accordingly, the Court dismisses the due process claims against Defendants with prejudice, as amendment would be futile.

## D. Failure to Train

Liability for inadequate training only arises where a failure to train reflects a deliberate or conscious choice by a municipality. *See City of Canton v. Harris*, 489 U.S. 378, 427 (1989). A plaintiff can establish liability by alleging that the injury was caused pursuant to a "policy or

custom of the municipality that reflects a deliberate indifference to the constitutional rights of its inhabitants." *Vandenburg v. Cty. of Riverside*, No. 16-55354, 2018 WL 549160, at *2 (9th Cir. Jan. 25, 2018) (internal quotations omitted). Here, Plaintiff alleges that NDOC enforces PREA reports but did not train its employees on "protocol and zero tolerance." (Am. Compl. at 7). The Court finds that Plaintiff's claim lacks any facts to support her assertion. Plaintiff does not allege that NDOC had a policy or custom amounting to deliberate indifference to Plaintiff's constitutional rights. Instead, Plaintiff asserts a legal conclusion couched as factual allegation which is insufficient to state a claim. *See Twombly*, 550 U.S. at 555. Thus, Plaintiff fails to establish a colorable claim against NDOC. Accordingly, the Court dismisses Plaintiff's failure to train cause of action against NDOC without prejudice.

### E. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "ha[s] held that in dismissing for failure to state a claim under Rule 12(b)(6), 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

The Court finds that Plaintiff may be able to plead additional facts to support her failure to train claim. Accordingly, the Court will grant Plaintiff leave to file a third amended complaint. Plaintiff shall file her third amended complaint within twenty-one (21) days of the date of this Order. Plaintiff is instructed not to file a third supplemental complaint but rather a complaint that incorporates all the necessary factual information and can stand alone without needing to reference a prior complaint.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 35), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's Due Process cause of action alleged against all Defendants is dismissed with prejudice.

**IT IS FURTHER ORDERED** that Plaintiff's failure to train cause of action against NDOC is dismissed without prejudice. Plaintiff's other causes of action survive.

**IT IS FURTHER ORDERED** that Plaintiff shall have twenty-one (21) days from the filing date of this Order to file a third amended complaint. Failure to file a third amended complaint by this date shall result in the dismissal of Plaintiff's claims with prejudice.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __30__ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court